**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Magnetek, Inc., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: 17-cv-3173 |
| The Travelers Indemnity Company and Travelers Casualty and Surety Company f/k/a The Aetna Casualty and Surety Company, and Velsicol Chemical, LLC., | ) ) ) ) ) ) | Judge Robert W. Gettleman |
| Defendants. | ) | |

**VELSICOL'S REPLY IN SUPPORT OF MOTION TO COMPEL MONSANTO**

**INTRODUCTION**

Despite the broad scope of discovery permitted under the Federal Rules, Monsanto refuses to comply with a valid subpoena issued by Defendant Velsicol (the "Subpoena"). The materials sought were fairly straightforward, largely involving documents between Monsanto and third parties and communications with those third parties. The other information sought related to sales records for the products that underlie the relevant agreements. Notwithstanding these plain, and simple requests, none of which call for information protected by an applicable privilege or the work-product doctrine, Monsanto has gone to great lengths to avoid producing any of the requested documents. In taking this position, Monsanto snubs its nose at the basic principle of discovery, and the obligation to fully respond to non-party subpoenas.

The thrust of Monsanto's response is to decry Velsicol's lack of agreement to Monsanto's unilateral effort to narrow the scope of the requests. But these requests are narrow already. The real question is what is Monsanto trying to hide and why?

Additionally, in an effort to narrow the issues before the Court, Velsicol has offered to accept several of Monsanto's proposed stipulations in lieu of receiving certain documents. As of the date of this filing, it appears that the parties are at issue primarily with respect to just one category of requested documents--Monsanto's communications with other parties who were similarly situated to Magnetek.[1]

Monsanto's Opposition to the Motion to Compel, that seeks to shield documents from Defendants, is founded on the false premise that this Court erred when it ordered that discovery must occur in response to Velsicol's Motion for Reconsideration. But Monsanto's assertion is meritless; it is based on incorrect factual and legal arguments concerning both i) the nature of the summary judgment motion filed by Travelers; and ii) Travelers purported obligations to Magnetek prior to the time that Magnetek filed a lawsuit against Monsanto. Recognizing that discovery was necessary as a matter of fairness, this Court ordered the discovery that Velsicol had asserted it needed in its reconsideration motion, including the discovery to which Monsanto now objects.

Monsanto also attempts to avoid Velsicol's subpoena by claiming that the discovery sought is subject to supposed privileges. But as detailed below, the purported privileges that Monsanto raises have no applicability here. Finally, Monsanto's Response insists that the requests in the Subpoena are somehow unduly burdensome because they request documents that date back to the 1970's. But this argument is specious given that this lawsuit revolves around a demand Monsanto sent to Magnetek based on a document executed in 1972, and Monsanto has noted the precise

---

[1] Specifically, the parties have exchanged proposals and appear to have agreement on Request Nos. 1,3, and 4. As indicated above, the request where no resolution appears possible is Request No. 2: "All communications since January 1, 2016 with any entity that signed contractual agreements relating in any way to the defense and/or indemnification of Monsanto by any purchasers of PCBs from Monsanto." In the event that agreement on Request Nos. 1, 3 and 4 are confirmed following the filing of this Reply, Velsicol will file a supplemental reply, advising the Court of any such resolution.

number of such documents (and documents that it must have at its disposal considering it has made indemnification requests to approximately twenty-five entities based on those documents).

## ARGUMENT

### A. Magnetek's Breach of the Duty To Cooperate Is Relevant To The Issues In This Lawsuit.

As set forth in its Opening Motion, Velsicol seeks documents from Monsanto which are relevant to an issue which entered this case when Magnetek filed an Amended Complaint: whether Magnetek is entitled to a defense from Travelers in two lawsuits: one it filed in New Jersey against Monsanto (the "New Jersey Suit") and one filed, in turn, by Monsanto in Missouri (the "Missouri Suit"). The primary documents that are at issue involve communications between Monsanto and other parties who, like Magnetek, executed indemnity agreements with Monsanto. Those communications, which will establish how Monsanto dealt with the similarly situated parties, can provide evidence that Monsanto would not have filed suit against Magnetek, and would not have sought the compensation from Magnetek now at issue, if Magnetek had not sued Monsanto first and in doing so breached its obligations under the Travelers policies at issue. Thus, the documents at issue directly bear on the question of whether Magnetek breached its duty to cooperate with Travelers and thus forfeited any purported right to coverage.

Monsanto argues that it should not have to comply with the Subpoena, essentially insisting that this Court erred when it ordered discovery relating to the question of Magnetek's duty to cooperate. Monsanto further maintains that Magnetek's duty to cooperate is not a "live issue." Its argument is premised on the idea that Magnetek should have been relieved of any duty to cooperate because Travelers purportedly improperly breached its own duties first by supposedly "denying coverage" to Magnetek prior to filing of the New Jersey Suit. There is no merit to Monsanto's argument. This Court ordered discovery because, as discussed at length in its briefing on the

3

Motion to Reconsider, it was erroneous to find that Travelers had breached any obligation by "denying coverage" prior to filing of the New Jersey Suit.

The fact is that at the time that Magnetek filed the New Jersey Suit, Travelers could not have breached any obligation to Magnetek because nothing had occurred at that time which could trigger any such obligation by Travelers. Specifically, prior to the time that the New Jersey lawsuit was filed, the only thing that had occurred was that Magnetek had been sent a demand by Monsanto's purported successor (the "**Monsanto Demand"**). The Monsanto Demand was based on a "Special Undertaking" that UMC (now Magnetek) had executed in favor of Monsanto in 1972. The Monsanto Demand claimed that pursuant to the Special Undertaking, UMC/Magnetek had agreed to defend and indemnify Monsanto in connection with claims made against Monsanto with respect to PCBs sold by Monsanto to UMC. ("**Underlying PCB Claims**"). Significantly, none of the Underlying PCB Claims were brought against UMC or Magnetek. Moreover, the Monsanto Demand did not threaten any immediate lawsuit or any other action against Magnetek. The Monsanto Demand only indicated that Monsanto planned in the future to determine the amount that Magnetek would be responsible for with regards to the Underlying PCB Claims. The Monsanto Demand indicated that there were numerous other companies which had executed Special Undertakings (the "Other Purported Indemnitors") and that Monsanto would at some point in the future divvy up the claimed responsibilities of each company that had executed the Special Undertaking.

Magnetek notified Travelers in September 2016 of the Monsanto Demand and the Underlying PCB Claims and requested that Travelers "defend and indemnify Magnetek under all applicable policies" (the "**September Tender**"). At the time of the September Tender, however, Travelers had no possible obligation in connection with that tender. There was no duty to defend

because, pursuant to the Travelers policies at issue, that duty only arises if a "suit" is filed against an insured. The Monsanto Demand was merely correspondence, not a lawsuit. And there was also no duty to indemnify, as Magnetek had admittedly not paid any money to Monsanto in connection with the Monsanto Demand and Magnetek's own position—as evidenced by filings in this case—is that Magnetek owes *nothing* to Monsanto.

The bottom line is that Travelers had not breached any obligation to Magnetek prior to the time that the New Jersey suit was filed. Travelers thus engaged in no action that could even arguably have abrogated Magnetek's duty to cooperate. The breach of that duty to cooperate is thus still a "live issue"; indeed, it is highly relevant to the issues in this case. This was explained at length in Velsicol's motion for reconsideration. And that motion resulted in this Court's decision to permit discovery, implicitly recognizing the potential relevance of the documents sought here which directly relate to the issue of whether Magnetek's filling of the New Jersey suit without consulting Travelers was: i) wholly unnecessary, ii) the trigger for the Missouri lawsuit, and iii) a breach of Magnetek's duty to cooperate.

### B. Velsicol Timely Requested the Discovery at Issue

Monsanto also insists that this Court erred when it permitted discovery because Velsicol's requests were somehow issued too late. Specifically, Monsanto maintains that discovery with respect to the New Jersey and Missouri Suits should have been issued prior to the time that Magnetek filed its motion for summary judgment or, if not, by means of a Rule 56(d) motion upon the filing of the summary judgment motion. This argument is fatally flawed because it completely misapprehends the nature of the case at the time that summary judgment was filed.

At the time that Magnetek filed for summary judgment, its Complaint was based solely on the Monsanto Demand. There were no allegations in the Complaint that mentioned or related to

the New Jersey or Missouri Suit and there was no claim based on a duty to defend or indemnify those Suits. It was only after Velsicol filed its response to the summary judgment that Magnetek moved to amend (*nunc pro tunc*) its Complaint and add allegations that it was owed a duty regarding the New Jersey and Missouri Suits. In other words, only after Velsicol had already responded to the summary judgment did Magnetek attempt to add a claim against Travelers seeking defense and indemnity in connection with the New Jersey and Missouri suits. Thus, until Magnetek sought to amend its complaint (which was after the summary judgment response was filed) there was absolutely no reason for Velsicol to seek any discovery related to the New Jersey or Missouri lawsuits; such discovery was irrelevant to the issues in the case before that time.

After this Court granted summary judgment to Magnetek based on the new claims in the Amended Complaint (relating to the New Jersey and Missouri Suits[2]), Velsicol moved the Court for reconsideration. Velsicol pointed out that the grant of summary judgment had occurred without Velsicol having had any opportunity to take discovery on those claims, including discovery on Monsanto. This Court, recognizing the inherent lack of fairness with that situation, granted Velsicol its first opportunity to obtain discovery to support its position that Magnetek's filing of the New Jersey Suit was indeed a violation of Magnetek's duty to cooperate and was the trigger for the Missouri Suit. Velsicol needed, *inter alia*, discovery from Monsanto regarding how it had dealt with the Other Purported Indemnitors in order to establish that Monsanto would not have filed suit in Missouri seeking to enforce the indemnification in the Special Undertaking, had not Magnetek chosen to file suit against Monsanto in New Jersey, in breach of its duty to cooperate. Accordingly, Monsanto's assertion that Velsicol had waited too long to request the discovery at issue is contrary to the facts.

---

[2] As noted in the Motion to Reconsider, this Court had stated during a prior hearing that it would not even rule on the motion to amend until after it ruled on summary judgment, but then did so anyway.

Perhaps aware of the weakness of its arguments that the documents sought were irrelevant or sought too late, Monsanto then argues that it should be permitted to evade discovery based on some sort of privilege. But as discussed below, no such privilege exists.

### C. Monsanto has Failed to Establish Any Privilege

1) The Insurer-Insured Privilege is Inapplicable

Relying on irrelevant case law involving insurance companies in the process of defending their insureds, Monsanto claims that there is some sort of insurer-insured privilege that would allow Monsanto to evade discovery of the communications between it and the Other Purported Indemnitors. But Monsanto does not, and cannot, cite any law which holds that this law applies to the documents at issue here that involve agreements and communications with the Other Purported Indemnitors with whom it was at odds. Indeed, Monsanto's own case law makes clear that the insurer-insured privilege has no relevance here. See, Monsanto Response P. 11, citing *Caldwell v. Advocate Condell Med. Ctr.*, 2017 IL App (2d) 160456, ¶ 71, 87 N.E.3d 1020, 1036.[3]

As the *Caldwell* court noted, the insurer-insured privilege is nothing more than an extension of attorney client privilege, allowing such privilege to be invoked when an insurer is acting as an agent for its insured's attorney. It applies only when the party claiming the privilege has established that the insurer had assumed a duty to defend an underlying action **and** the communication at issue is "made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." *Id.*; See, also, *People v. Ryan,* 197 N.E.2d 15, 17 (Ill.1964) (communications to an insurer-agent made for the "dominant purposes of transmitting such communications to an attorney for the protection of the interests of the insured

---

[3] All of the cases cited by Monsanto involve situations where an insurer was defending an insured against an underlying matter and the communications involve facts concerning that underlying dispute.

7

may be properly characterized as privileged under the attorney-client privilege.") In other words, the privilege only exists when an insurer and an insured are **aligned to defeat claims made by a third party and the insurer is acting in such capacity**. But the privilege has absolutely no applicability here where such alignment is missing and there was no such relationship.

Monsanto has not (and could not) establish that the communications were made to the Other Purported Indemnitors after they had assumed a duty to defend Monsanto. More critically, the communications at issue were unquestionably **not** made for the purpose of having an indemnitor transmit that communication to Monsanto's attorney in order to protect Monsanto's interests in the underlying suit. Indeed, the Other Purported Indemnitors were denying any obligation to defend Monsanto and the communications involved issues regarding *whether* and/or to what extent the Other Purported Indemnitors could be liable to Monsanto on any indemnity.

Monsanto's attempt to invoke insurer-insured privilege with respect to indemnitors with whom it was in a dispute regarding their obligations is specious. Monsanto cannot evade Velsicol's subpoena based on that privilege.

### 2. Rule 408 has No Relevance Here

Equally meritless is Monsanto's claim that Rule 408 which limits the use of settlement agreements at trial somehow grants it permission to evade the discovery sought by Velsicol with respect to settlement agreements that Monsanto has entered into with the Other Purported Indemnitors[4]. Rule 408 is inapplicable here for several reasons. First, "Rule 408 is an evidentiary rule, which is best addressed in context of admissibility of evidence at trial." *B PTR, Inc. v. Forsythe Racing, Inc.*, 08 C 5517, 2009 WL 1606970, at *4 (N.D. Ill. June 9, 2009). It is not relevant to issues of discovery. *Id.* Moreover and critically, Rule 408 only relates to settlement

---

[4] The parties have exchanged proposals to resolve their differences with respect to Velsicol's request in connection with the settlement agreements.

communications between the parties to the litigation and only prevents their admission from being used to directly establish liability of a party. *Id.* The settlement documents sought here do not involve any Plaintiff or Defendant and thus Rule 408 is not applicable.

Tellingly, the cases that Monsanto cites in support of its argument that Rule 408 provides a privilege do not even mention Rule 408. Instead, they are either wholly inapposite *Grove Fresh*[5]) or they are contrary to Monsanto's claim of privilege (*Homeland Insurance*). Indeed, in the *Homeland Insurance* case, the court recognized that when a settlement agreement could be relevant to the issues in a case, it is most certainly subject to discovery. *Homeland Ins. Co. of New York v. Health Care Serv. Corp.*, 330 F.R.D. 180, 183 (N.D. Ill. 2019) (rejecting motion to compel because settlement agreement was not yet relevant but doing so "without prejudice" recognizing that the agreement could later be relevant and subject to discovery.)

Here the discovery sought is unquestionably relevant. Documents which relate to how Monsanto treated similarly-situated parties is likely to produce evidence that will establish, among other things, that Monsanto had not threatened to, and had no desire to, bring suit against parties similarly situated to Magnetek. This evidence will thus help Defendants establish that absent Magnetek's provocation, Monsanto would not have filed suit against Magnetek and would never have sought from Magnetek all of its defense costs and liability in connection with the Underlying actions. That evidence would thus Magnetek's filing the New Jersey Suit breached its duty to cooperate and that such breach prejudiced Defendants.

---

[5] The *Grove Fresh* case did not involve, nor even discuss, the discovery of settlement agreements. Instead, the issue was whether an attorney should be sanctioned for divulging the contents of a settlement agreement to the press. *Grove Fresh Distributors, Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1430 (N.D. Ill. 1995), *aff'd,* 134 F.3d 374 (7th Cir. 1998)(case involved "The tragedy of an attorney who could not keep a confidence.")The case has no relevance here.

**D. The Discovery Sought was Neither Overly Burdensome Nor Overly Broad**

1. <u>Monsanto's Claim that the Request are Unduly Burdensome is Disingenuous.</u>

In another attempt to evade discovery, Monsanto claims that it would be too burdensome for it to track down the documents requested without a specific time limitation. Those requests, however ask only for a very limited set of documents: contractual agreements for the defense/indemnity of PCB claims, as well as copies of any legal actions and/or settlement agreements relating to those contractual agreements[6]. Monsanto laments that these requests require it to search for documents going back to the 1970's. But Monsanto has not said that it does not have these documents or that it cannot obtain them relatively easily (its affidavit says that the documents are either in its files or that of outside counsel). Moreover, Monsanto obviously had no difficulty finding the Special Undertaking, even though it was executed by UMC in the early 1970's. Indeed, it presented that document to Magnetek as the basis for its demand. It is disingenuous for Monsanto to be relying on a document from the 1970's as the entire basis for its claims against Magnetek, but to now claim that it is unduly burdensome for it to obtain other documents from that time period. Further, Monsanto has offered that there are 79 such undertakings (see Exh. 2 to the response). Based on this, Monsanto must have identified and have copies of these documents. Thus, Monsanto should not be permitted to rely on burden to avoid producing the documents.

2. <u>Monsanto's Claim that the Requests are Overly Broad is Meritless</u>

Monsanto also insists that the requests are somehow overly broad just because they contain the terms "any and all." This argument is wholly without merit. As noted above, the requests seek a very limited and specific set of documents relating to contractual indemnity agreements and the

---

[6] The parties have exchanged proposals to resolve their differences with respect to this request.

legal actions and/or settlement agreements related to them, as well as communications regrading those agreements. Courts in this district unquestionably view as proper requirements that require "any and all" documents when they are otherwise properly targeted to specific information. See, e.g. *JPMorgan Chase Bank, N.A. v. PT Indah Kiat Pulp & Paper Corp.*, 02 C 6240, 2012 WL 6730340, at *2 (N.D. Ill. Dec. 28, 2012, emphasis supplied) ("JPMorgan's motion to compel is granted and the court orders the defendants to produce **any and all** documents…")

Completely inapposite are the cases that Plaintiff cites in supposed support of its assertion that the phrase "any and all" renders a request overly broad. In those cases, it was the extremely broad nature of the requests themselves or the failure to explain why the documents were necessary that rendered the request improper, not the use of the phrase "any and all." See, Monsanto Brief, at P. 9, citing, *Webb v. CBS Broad., Inc.*, 08 C 6241, 2011 WL 111615, at *12 (N.D. Ill. Jan. 13, 2011)(request seeking the Defendant's entire hard drive that retained "any information" was overly broad); *J & A Freight Sys., Inc. v. Travelers Prop. Cas. Co. of Am.*, 14 C 1581, 2015 WL 360560, at *2 (N.D. Ill. Jan. 27, 2015) (request for any and all documents relating to "the drafting of insurance policies," was overly broad); *United States v. Jungen*, 13-CR-121, 2014 WL 4924654, at *4 (E.D. Wis. Sept. 30, 2014)(Defendant not entitled to documents in files when it "fail[ed] to provide any indication as to what they expect to find in these files.") The limited requests here are in no way equivalent to the document requests in those cases and are not overly broad.

                                             **VELSICOL CHEMICAL, LLC.**

                                             By: */s/ Steven P. Blonder*
                                                One of Its Attorneys

Steven P. Blonder (#6215773)
**MUCH SHELIST, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 521-2000
sblonder@muchlaw.com

## **CERTIFICATE OF FILING AND SERVICE**

I, Steven P. Blonder, an attorney, hereby certify that I caused a true and correct copy of the ***Velsicol's Reply in Support of Its Motion to Compel Monsanto Corporation*** to be electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division by using the CM/ECF system, which will send notification of such filing to the following recipients on this 26th day of June, 2020:

Timothy D. Elliott
Rathje & Woodward
300 E. Roosevelt Road, Suite 300
Wheaton, IL 60187
telliott@rathjewoodward.com

Joseph B. Schmit
Phillips Lytle LLP
340 Madison Avenue, 17th Floor
New York, NY 10706
jschmit@phillipslytle.com

Ryan A. Lema
Phillips Lytle LLP
One Canalside, 125 Main Street
Buffalo, NY 14203
rlema@phillipslytle.com

Lauren B. McMillen
Kenneth C. Newa
Plunkett Cooney, P.C.
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
lmcmillen@plunkettcooney.com
knewa@plunkettcooney.com

*/s/ Steven P. Blonder*

10931279_1